UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ARTUR WOLLOCKO,

        PETITIONER,

vs.

JOHN DOE, WARDEN, MDC BROOKLYN,
on behalf of the UNITED STATES of AMERICA,

        RESPONDENT.
------------------------------------------------------------x

**JUDGE ROBINSON**

MEMORANDUM OF LAW IN
SUPPORT OF ENTRY OF ORDER
TO SHOW CAUSE

**07 CIV. 8420**

    The facts are fully set forth in the attached Affidavit of Wollocko and the Affirmations of attorneys Ostrer, Mazzariello and Sussman with the exhibits thereto. Petitioner alleges that his continued confinement at MDC Brooklyn is unconstitutional in light of the constitutional infirmities set forth in his petition and shown by and through the Affidavit of Artur Wollocko and the Affirmations of Ostrer, Mazzarello and Sussman and the exhibits thereto. Petitioner further alleges that further incarceration irreparably harms petitioner and requests that this Court sign the attached Order to Show Cause to expedite consideration and resolution of this Petition.

I. **Defendant did not knowingly enter a Plea of Guilty**

    It is axiomatic that any plea of guilty must be voluntary and knowing. Put another way, a defendant must know to what he is pleading. To avoid confusion and to establish a record that a plea is knowing and voluntary, prosecutors and courts typically utilize two devices: written plea agreements and allocutions at sentencing. Both mechanisms serve to assure all involved that the defendant knows the charge[s] to which he is pleading and the likely consequences.

    Here, there was no written plea agreement and no allocution of the defendant at the time

he entered his plea. The Assistant United States Attorney referenced one **transaction** during his description of the matter to which defendant was pleading guilty. Defendant interpreted that description to cover the transaction which netted his wife a nearly $17,000 commission from Purdue. Defendant never admitted that his family received any benefit from the larger, original transaction, i.e., Purdue's purchase of the XRPD machine for $245,000, and he did not understand that he was entering a plea of guilty to that charge.

The Affirmation of Mr. Mazzariello confirms the reasonableness of defendant's understanding in light of the advice provided by his then counsel. Simply stated, counsel advised Wollocko that he was pleading only to the smaller transaction and, on that basis, defendant agreed to enter the plea.

Subsequent events also prove that defendant really did not intend to plead guilty to the larger transaction. As soon as he saw a draft pre-sentencing report which claimed that restitution included the alleged benefit to his wife from the larger transaction, defendant immediately set out to demonstrate that his wife had received no such benefit and that Purdue Pharmaceuticals had paid a market rate price for the XRPD machine, one not influenced by any corrupt or illegal practice of his. Defendant's then lead counsel submitted documents to the Probation Office which meant to establish both propositions, hardly a position consistent with defendant's taking responsibility for this element of the information. See, Exhibit 1 to Mazzariello Affirmation.

In short, defendant did not knowingly and voluntarily enter a plea of guilty to the more substantial count of mail fraud which the government charged. He understood the exact opposite: that he was pleading guilty to the other transaction, not this one. On this ground alone, his plea

should be vacated as it has since been construed as comprehending both counts of mail fraud. And, the sentence, which was predicated primarily on the quantum of restitution owed for the count to which defendant never plead guilty or intended to plead guilty, must also be vacated.

## II. **Defendant Received Ineffective Assistance of Counsel**

By the time of sentencing on March 7, 2007, defendant's initial lead counsel was gravely ill. Benjamin Ostrer, Esq., who admittedly had played a mininal role in defending the case, appeared with Michael Mazzariello, an attorney who had worked very closely with the Wollockos and knew that they protested the restitution calculation and the consequent sentencing range. He understood that Mr. Fallick had repeatedly advised Wollocko that he was *not pleading guilty* of the larger mail fraud transaction and that as soon as it became clear that the Probation Office so interpreted the plea, the Wollockos had demanded that Fallick correct this mis-impression. Mazzariello also knew that Fallick had attempted to do so, but, by the time of sentencing, this effort had failed and the parties lacked a meeting of the mind of what defendant admitted.

Despite this knowledge, Mazzariello did not explain the aforestated situation to the Court. As Ostrer explicitly *accepted* the sum of restitution and the sentencing range in the final version of the pre-sentencing report, Mazzariello deferred to his senior colleague who admits to not having focused on either issue.

Claims of ineffective assistance of counsel relating to a guilty plea are reviewed under the standard announced in Strickland v. Washington, 466 U.S. 668, 687-88, 691-94, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984). See, Hill v. Lockhard, 474 U.S. 52, 57-59, 88 L.Ed.2d 203, 106 S.Ct. 366 (1985)(holding that the Strickland standards applied to "ineffective-assistance claims arising

out of the plea process"). In short, was counsel's representation objectively deficient and did defendant suffer prejudice as a result of these deficiencies? See, Mitchell v. Scully, 746 F.2d 951 (2d Cir. 1984 (adopting Strickland standards).

Here, counsel repeatedly advised his client pre-plea that he was entering a plea to one of two events constituting mail fraud. The plea process did not sufficiently elucidate the exact event to which defendant was pleading. The district court did not allocute defendant nor receive a written plea agreement from counsel. As critically, defense counsel repeatedly assured his client that he would be sentenced based on a restitution sum, $17,000. These representations caused the defendant to take the plea.

Had defendant known and understood the nature of his plea and the consequent exposure, he would not have taken the plea. **See**, Hill, supra., at 59-60. In short, defendant was prejudiced by his counsel's failure to advise him of the nature of his plea and the reasonably foreseeable consequences.

Likewise, both before and certainly at sentencing, rather than announcing their client's readiness and accept the disputed restitution sum and consequent sentencing guideline range, Mazzariello and Ostrer were obliged to advise the Court that their client had not intended to plead guilty to the more serious allegation of mail fraud and **did dispute** the calculations of restitution and sentencing guidelines. Cf.. Hiraldo v. United States, 2006 U.S. Dist. LEXIS 46615 (S.D.N.Y. 2006)(counsel had no duty to object to sentencing guideline calculation if such guidelines were in fact correct and properly reflected offenses to which his client plead) and Villar v. United States, 2006 U.S. Dist. LEXIS 397 (S.D.N.Y. 2006)(holding that prisoner's counsel was not constitutionally ineffective during the plea process because the prisoner admitted

during his proffer session that his conduct did indeed violate [the law] and his counsel's representation in the plea process resulted in less jail time than the prisoner would have gotten had he been convicted.").

Here, Ostrer represented the exact opposite, accepting both calculations, and thereby providing ineffective assistance to his client out of ignorance of the dispute which, by then, had existed for many months concerning these matters. Had counsel properly exercised their function, the Court would have been fully apprised of the defendant's unknowing plea [this Court did not take the plea in the first instance] and defendant would have been accorded the chance to withdraw that plea.

Finally, at no stage in these proceedings was defense counsels' conduct informed by any strategic considerations.

As defendant insists that there was no "factual basis for the plea", F.R.Crim.P. 11(b)(3), the plea should be vacated as to the more serious count of mail fraud and defendant freed after serving a sentence commensurate with the offense to which he did knowingly plead guilty, pending a determination by the United States as to whether to try him on the more serious charge.

### III. Irreparable Harm follows Continued Confinement

Deprivation of liberty constitutes irreparable harm where that deprivation lacks constitutional basis. As shown above, the ongoing incarceration of the petitioner for a term of years far in excess of that reasonable for the crime to which he did accept responsibility and on the basis on ineffective assistance of counsel should be redressed as soon as possible. Accordingly, petitioner has respectfully presented an order to show cause allowing this matter to be considered and resolved at the Court's earliest convenience, allowing due process to the

United States..

Respectfully submitted,

MICHAEL H. SUSSMAN [3497]

SUSSMAN & WATKINS
PO Box 1005
Goshen, NY 10924
(845)-294-3991

Counsel for Defendant Artur Wollocko

Dated: September 23, 2007