1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK

2  ----------------------------------x

3  UNITED STATES of AMERICA,

4
        -against-              05 Cr. 1235

5
   ARTUR WOLLOCKO,

6
        Defendant.

7
   ----------------------------------x

8

9                    United States Courthouse
                     White Plains, New York

10
                     March 7, 2007

11

12  B e f o r e :

13           HON. STEPHEN C. ROBINSON,
                     District Court Judge

14
    A P P E A R A N C E S:

15

16  ELLIOTT JACOBSON, Assistant United States

17

18  BENJAMIN OSTRER, Esq.
    MICHAEL MAZZARIELLO, Esq.

19           Attorneys for Defendant

20

21  ALSO PRESENT:  ED BAUM, Esq.  Purdu Pharma

22

23

24  ANGELA A. O'DONNELL, RPR

25  Official Court Reporter

2

1          P R O C E E D I N G S

2          THE CLERK:  Your Honor, this is in the matter of

3  United States of America versus Artur Wollocko.

4          Starting with the government, can I have counsel

5  state their appearance for the record.

6          MR. JACOBSON:  Elliott Jacobson for the

7  government.  Good morning.  Good afternoon.

8          THE COURT:  Good afternoon.

9          MR. JACOBSON:  Your Honor, and just to identify

10  the gentleman sitting to my right, this is Ed Baum, he's the

11  Proskauer firm, he represents the victim Purdu Pharma.

12          MR. BAUM:  Good afternoon.

13          THE COURT:  Good afternoon, Mr. Baum.  Good

14  Afternoon, Mr. Jacobson.

15          MR. OSTRER:  Benjamin Ostrer, 111 Main Street,

16  Chester, New York, on behalf Artur Wollocko.

17          MR. MAZZRIELLO:  Michael Mazzriello.  Good

18  afternoon to you, your Honor.

19          THE COURT:  Good afternoon to you, Mr. Mazzriello.

20  Good afternoon, Mr. Ostrer.

21          And who is this we have with us?

22          MR. OSTRER:  Mr. Wollocko.

23          THE COURT:  Good afternoon Mr. Wollocko.

24    Please be seated gentlemen.  We're here today to

25    sentence Mr. Wollocko on his guilty plea before Magistrate

3

1    Judge Smith on December 19, 2005.  He pled guilty to a

2    felony information that contained a single count.  I'm

3    sorry, two counts.

4        Let me ask you first, I have received two

5    submissions from the defendants, one dated November 16,

6    2006, the other dated October 26, 2006.  Have there been any

7    other submissions in addition to those?  Just to make sure I

8    have everything.

AW – I did not see any submissions

9        MR. MAZZRIELLO:  No, your Honor.

10        THE COURT:  I have no submission from the

11    government; is that correct?

12        MR. JACOBSON:  No, we just informed -- I spent a

13    good deal of time with the probation officer informing him

14    of the facts of the case and the Government's view of the

15    sentencing guidelines, which I believe he adopted.

AW – We had only 2 weeks after first probation officer writeups and no chance to explain and review with probation officer our documentations.

16        THE COURT:  I just wanted to make sure I'm not

17    missing something.

18        Well, let me turn to the defendant and ask you

19    first -- who is going to be taking the lead here,

20    Mr. Ostrer?

21      MR. OSTRER: Your Honor, I believe I will, yes.

22      THE COURT: Mr. Ostrer, let me ask you, have you

23  had a sufficient opportunity to review the presentence

24  report and go over it with your client?

25      MR. OSTRER: Your Honor, that has been reviewed.

                                    4

1  I have not conducted that review, that has been done by

2  Mr. Fallick, who you know is regrettably not up to the task

3  of appearing here given –
AW – I had plenty of objections and I wrote to Barry and Ben my tots.

4      THE COURT: Sorry to hear that.

5      MR. OSTRER: -- his present state. But I have met

6  with Mr. Wollocko, those submissions are certainly over --

7  Mr. Mazzriello worked on those submissions with Mr. Fallick

8  and Mr. Mazzriello is present today.
AW – as above

9      THE COURT: And you feel that, either through you

10  or through someone else working with Mr. Wollocko, he's had

11  a sufficient opportunity to go over the presentence report?
AW – never agreed with the XRPD deal which the Baum and Purdue lied to prosecutor regarding the deal. The propewr documentations should be attached. I had no chance to see the documentations submitted to Probation officer.

12      MR. OSTRER: Yes, your Honor.

13      **THE COURT: And let me ask you, as the presentence**

14  **report stands now, what objections, if any, do you have?**

15      **MR. OSTRER: Your Honor, I believe there is a**

16  **submission relating only to our view of the restitution**

___17  amount.  As to the computation of the guidelines, there's no

___18  request for any modification.  There's no contest to the

___19  underlying facts as to the computation that's contained

___20  therein.

AW – Our position was clear with XRPD – I had nothing to do with it only with Computer, I have no idea why Ben did not specify that.

21        THE COURT:  Great.  Thank you.

22        Let me ask you, Mr. Jacobson, have you had an

23  opportunity, sufficient opportunity, to review the

24  presentence report and do you have any objections or changes

25  to it?

5

1_____MR. JACOBSON:  Yes and no.

AW- Explain what he wants to say?  Yes and No.

2        THE COURT:  Thank you.

3        I will say that, on page four of the presentence

4  report under "B, Narcotics Violation, Subsection 3, iii," it

5  says, "In accordance with the above, the defendant's offense

6  level with respect to the" it says "tax offense."

7        MR. JACOBSON:  I actually have, you'll forgive me

8  Judge, I read this long ago and I spoke to the probation

9  officer and did mention that there were a few either typos

10  or things that ought to be changed.

11        THE COURT:  It should say "narcotics."

12        MR. JACOBSON:  I have penciled in "tax" with a big

13  question mark next to it, and I'm sure that I mentioned to

14  him that that was most likely a typographical --

15      THE COURT:  I wanted to alert the parties I'm

16  changing that to say "narcotic offense."  Does anyone have

17  any objection to that?

18      MR. OSTRER:  No, sir.

19      THE COURT:  And I thought there was one more

20  thing.  I noted that on -- I'm sorry, counsel, you can talk.

21      MR. JACOBSON:  If we could have just a moment?

22      (Counsel confer)

23      MR. JACOBSON:  Thank you, Judge.

24      THE COURT:  I also noted that, on page five of the

25  report, under "Restitution," it states that, "Restitution in

6

1  the approximate amount of $80,000 must be ordered."  And

2  noted in paragraph 20 on page eight it says, "A total

3  restitution amount of $111,661."  So I wanted to clarify

4  that with counsel.

5      MR. JACOBSON:  I think that, and, again, I have a

6  marginal note checking that, indicating -- that indicates to

7  me that I discussed it with a probation officer.  I

8  believe -- there was no plea agreement in this case, there

9  was just a straight plea and a Pimentel letter and the case

10  was handled by Mr. Dorsky in my office, who is no longer

11  with the office, and I believe that at the time of sentence

12  the government was of the view that the restitution amount

13  was in the neighborhood of $80,000.

14      Mr. Dorsky then left the office, the case was

15  reassigned to me, I spent an extensive amount of time with

16  Mr. Baum going over the underlying documentation in the case

17  and arrived at that figure of $111,661.  Defense counsel

18  made submissions trying to undercut that, but based on my

19  conversations with them here this morning they are prepared,

20  I believe, to accept that figure for today's purposes,

21  unless I misspoke.

AW- There is misunderstanding with the XRPD deal. The explanations should include the letters from Philips, Invoices, my description of work, last letters from Philips.

22      THE COURT:  Mr. Ostrer.

23      MR. OSTRER:  Your Honor Mr. Fallick did submit

24  documentation, as Mr. Jacobson directly observes,

25  undercutting that amount.  When Mr. Wollocko pled guilty, he

7

1  acknowledged receipt of a commission.  That commission was a

2  different sum than the loss as computed by Probation

3  Department, but as I previously stated on the record, your

4  Honor, we're not asking for a hearing on the restitution.

5  We attempted to persuade probation that the restitution

6  amount should be $17,000 at most.  They have not accepted

7  our argument.  But I do not believe it's in the client's

8  interest or worthy of further submission and I discussed



9    that fully with Mr. Fallick.  The client's been so made

10    aware.

AW – I was not aware that the 111K will be to pay and I am responsible for buying the instrument from Philips. Should be Dr. Philip Palermo and Dr. Goliber

11        THE COURT:  Great.  Thank you.

12        MR. JACOBSON:  But just so the court is clear,

13    it's the Government's view, and I think you can speak to

14    Mr. Sternberg, but I think he adopted our view that the

15    restitution figure was 111,661.

16        THE COURT:  And I am making a finding based on the

17    presentence report.  I've read Mr. Fallick's presentation on

18    that issue and I'm making a finding that the appropriate

19    restitution amount in this case is $111,661.

AW – same as above – what Barry wrote? I did not see that.

20        All right.  Those were the discrepancies in the

21    presentence report that at least we observed.  And so, let

22    us move forward.  Given that the parties do not dispute the

23    guidelines calculations in this case, the court will find

24    that the offense level for this defendant is 15 with a

25    criminal history category of one leading to a guideline



8

1    recommended sentence of 18 to 24 months.  Okay, having said

2    that, let me turn to the defendant.

3        In this, as in all criminal sentencings, the

4    defendant has an absolute right to be heard and to provide

5    any information to the court in mitigation of sentence or

6  provide any additional information they think the court

7  ought to be aware of.

AW - Combined documentations regarding lies of Purdue regarding the XRPD issues.

8      As I said, I've read the two submissions by

9  counsel, but, please, if you'd like, spend a moment with me

10  to tell me how you think I ought to view this sentencing.

11      Mr. Ostrer.

12      MR. OSTRER:  Your Honor, if I may, if I may impose

13  on the court to allow Mr. Mazzriello also to address some of

14  the more detailed elements.

15      THE COURT:  Absolutely.

16      MR. OSTRER:  Your Honor, Mr. Wollocko is

17  recognized by the presentence report, it's his first

18  involvement with the criminal justice system.  I believe

19  what distinguishes this case and why in considering the

20  application of the guidelines.  We would hope you would

21  fashion a sentence that is more lenient than suggested by

22  the presentence report, Mr. Wollocko, as a scientist, has

23  acknowledged that he now recognizes that the end doesn't

24  always justify the means, but I think it was his passion to

25  advance this blood-carrying product, OxyVita, that he so

9

1  passionately attempted to do and the benefits that would be

2  derived, whether he ultimately found that solution or

3  whether others built upon his effort, I think is his

4    motivating factor. And I think that, while that doesn't

5    excuse misconduct, that being the case, I think it is

6    something that your Honor could take into consideration.

7         The victim, based upon your Honor's conclusion

8    with respect to the restitution, will be made whole and I

9    think that on balance would warrant consideration of some --

10   it's no longer a departure, I understand, that the

11   guidelines but another item that your Honor is to consider,

12   but that does distinguish Mr. Wollocko from somebody else

13   who may be coming before you. And replete in the paperwork

14   that has been submitted to probation, and it's obvious your'

15   Honor has studied, is this passion that Mr. Wollocko and his

16   family, his wife and his son are both here, they've been

17   supportive of him, that it's been a family effort to try the

18   advance this oxygen-carrying product. It certainly met with

19   some favor in various quarters. It may ultimately save

20   lives. And that does not excuse stepping over the line. It

21   does not justify criminal conduct as a means to that end,

22   but I think it does, perhaps, cast a different light upon

23   what really motivated the underlying conduct.

24        MR. MAZZRIELLO: Judge Robinson, I've been

25   practicing law for 17 years I've never had the honor of

                                10

1    appearing before you or in this building. I met the

2  Wollockos, I worked extensively with Barry Fallick. I've

3  become known to them on an almost daily basis. I visited

4  the lab. I've met with Homeland Security. I've met with

5  Department of Defense. I've seen the letters from the

6  military, from the National Institute of Health. I firmly

7  believe, Judge Robinson, in this product. I'm not

8  minimizing what Mr. Wollocko did. We stood up

9  preindictment, pled guilty, the circumstances of which were

10  all laid out before Judge Smith.

11      We're asking for a period of nonincarceration,

12  your Honor, because he's on the verge of a breakthrough,

13  your Honor. I truly believe we submitted enough

14  documentation to you to show that. He's a scientist. His

15  wife's a scientist. They came from Poland with nothing.

16  They came from Poland with nothing. They crossed the line,

17  your Honor, he pled guilty. We need Mr. Wollocko out on a

18  period of probation, Judge, for as long as you want, an

19  ankle bracelet, whatever the terms of conditions you set.

20  He's on the verge of a breakthrough, your Honor, that could

21  help the soldiers in Iraq. I personally, as an officer of

22  the court, your Honor, have met and spoken to scientists

23  throughout the United States, scientists throughout the

24  world, your Honor, that believe in this product that has

25  been worked on for over 20 years. They are on the verge,

1   right now, with the National Institute of Health and the

2   FDA, your Honor, of putting this product on the field.  It

3   is an oxygen-carrying substitute, Judge.  What it means

4   simply is, when the soldier in Iraq gets shot or anywhere,

5   an accident victim, there's no blood available, the

6   paramedics and the doctors can use this to sustain life for

7   a period of time so the appropriate blood could be given to

8   these people.

9        Your Honor, I'm sorry if I'm shaking, I'm sorry if

10  I'm nervous.  I truly believe in this person.  I've been

11  practicing law 17 years, your Honor.  I just don't think

12  that Mr. Wollocko being in jail will serve anyone.  He's

13  learned his lesson.  He has no criminal record, your Honor.

14  No one's ever had contact with the system.  I cannot

15  emphasize to you enough, Judge Robinson, that they'll pay

16  the restitution and his work will continue and he'll abide

17  by all the conditions that you set.

18       Respectfully, your Honor.

19       THE COURT:  Thank you, counsel.

20       Mr. Wollocko, every criminal defendant has an

21  opportunity to present any information or make any statement

22  they wish to the court at their sentencing, and if you

23  choose to, now is the time.

24       THE DEFENDANT:  I would like, but if you don't

25  mind if I can have two or three more minutes?

12

1       THE COURT:  Sure.  Sure.  Take your time.

2       (Pause)

3       THE COURT:  Mr. Wollocko.

4       THE DEFENDANT:  If you don't mind, I never was in

5  such situation, so I'm not sure should I say something or

6  not, but I want to just try to convince you that my future

7  activities, I'm not going to minimalize this what I did, and

8  I'm taking full responsibility for this what I did, but I'm

9  going to just tell you that my future kind of activities and

10  future work will be only in going in -- sorry, in good

11  direction, that my work, this what I'm doing, will be -- I'm

12  sorry, I cannot.

13       THE COURT:  Thank you.

14       All right.  Let me turn to you, Mr. Jacobson.  Any

15  statement the government wishes to make?

16       MR. JACOBSON:  Well, just very briefly, your

17  Honor, **as the facts set forth in the probation report show,**
**AW – they are facts othervise, there is no facts proving that I am responsible for buying the system**
**for Purdue. The facts which are posted by Baum are laying and suggestions not based on**
**documentations. The numbers are truly real but the timing of obtaining them and future of the**
**systems are completely different.**
**In first part of my work using this instrument I initiated patent issuance for one of the Purdue**
**product, grreate success for the company never recognized.**

18  this defendant was involved in double dealing in two

19  instances.  He was responsible for buying this XRPD machine

20  for Purdu.  He entered into an illegal arrangement with one

_____ 21  or more persons at Philips to get a machine for Purdu and a

_____ 22  free machine for himself.  The way they did that was to

AW – there are facts otherwise. I did not see any facts of Prosecutor and include facts stating othervise.

_____ 23  overcharge Purdu by almost -- by approximately twice.  Twice

_____ 24  what Purdu should have been paying.  In addition, the

_____ 25  machine needed some computer software to run it and he sold

AW – There are prosecutor lays.

_____ 13


_____ 1  that software to Purdu, made a commission on it without

_____ 2  disclosing to Purdu that he was doing so.  So he involved in

_____ 3  double dealing in two instances.  And while for today's

_____ 4  purposes when it comes to sentencing he's not contesting

_____ 5  those facts, although the information charged him with that

_____ 6  conduct at the plea, he only admitted to the commissions on

_____ 7  the sale of the software, which is a much smaller element of

_____ 8  what occurred.

AW – even this is not true – the prosecutor has no idea what he is talking about. NOT SOFTWAREW BUT THE COMPUTER COMISSION WHICH ipbl (AS RESELLER) RECEIVED FROM COMPUTER SUPLIER

9        In addition to that, in the second count, and I

10  know it drops out as a matter of the sentencing guideline

11  computation, but considering the conduct here, in the second

12  count it's alleged, and he's admitted during his plea

13  allocution, that he advertised on the web that his company

14  was licensed to approve and handle narcotic products by the

15  DEA when he knew that was false.

16        While I applaud whatever efforts Mr. Wollocko may

17  have made or be making in the medical field, I don't believe

18  he's doing so as a member of a not-for-profit corporation or

19  for government agency.  He's in business, and he's in

20  business to make money, and in order to further that

Aw- This is not true – on the meeting with Dorski I specify that my work is devoted to people stating that my main goal is to help kids with leukemia – product which I am as creator of production can do that of course after approval which FBI prolongate by their actions. AW did placed in the project all of the available money which I get including refinancing and loans on cards. It is lay to state that this business is to make money. This business contradicting to PURDUE company business is created to help people.

21  business, he defrauded the company that he was working for

22  in a very serious way.  And because of that, we believe that

23  a sentence within the sentencing guidelines, as found by the

24  Probation Department and as acknowledged by the defendant,

25  is the appropriate sentence, a sentence within that range.

AW- I did not acknowledged the sentence.

                                    14


1          That concludes my remarks.  If you're willing to

2   hear from Mr. Baum, I believe he'd like to be heard briefly.

3          THE COURT:  Sure.  This court is always open to

4   hearing from victims of a crime or fraud to make a

5   presentation.

6          Let me turn to you, Mr. Baum.

7          MR. BAUM:  Thank you, your Honor.

8          I should indicate, your Honor, that I am counsel

9   of record in a civil action that is pending across the

10  street in Supreme Court that was brought by Purdu Pharma

11  against Mr. Wollocko and his wife and their entities nearly

12  four years ago now.  The reason I mention that, your Honor,

13  is the defense has given the suggestion in their

14  presentation that Mr. Wollocko was engaged in some form of

14  single shred of evidence, made any showing to dispute the

15  showing that he had stolen that information and that

16  property.

17      And that preliminary injunction was ultimately

18  entered after the TRO had been in effect for a year.  It was

19  converted to a preliminary injunction by the Supreme Court

20  in light of the defendant's failure to oppose the motion at

21  all, your Honor.

22      As part of the evidentiary showing in that matter,

23  we provided to the Supreme Court defendant's own documents

24  which showed their business plans for this competing

25  business they had set up on the side using my client's

16

1   intellectual and physical property and resources.  The blood

2   product that defense counsel was discussing as being the

3   alleged justification for Mr. Wollocko's criminal scheme was

4   listed as only one of approximately 10 business lines that

5   the Wollockos were planning on pursuing with this private

6   and unlawful business venture that they had set up on the

7   side.  Many of the business lines that they were planning to

8   pursue and had taken steps to pursue were based on

9   information and business ideas that were stolen from my

10  client by Mr. Wollocko while he occupied a position of trust

11  as a research scientist for my client.

15 public interest or public-spirited endeavor and that somehow

16 justifies the criminal conduct that was engaged in these

17 circumstances, but I think the reality shows the context in

18 which that took place is that, what Mr. Wollocko was engaged

19 in was a very broad-based plan to essentially steal

20 financial resources, intellectual property and physical

21 property from his employer for the express purpose with his

22 wife of setting up a large, for-profit pharmaceutical

23 business for their own benefit without any disclosure to his

24 employer.

25        In the civil action that is pending across the

15

1 street, your Honor, which we commenced approximately four

2 years ago, it was begun with a motion for a temporary

3 restraining order and preliminary injunction to restrain

4 Mr. Wollocko from using the vast amounts of intellectual

5 property and physical property that he had stolen from his

6 employer during the period of time he was entrusted with

7 access to the company's most valuable trade secrets and

8 physical property in his position as a research scientist.

9 That motion was granted by the Supreme Court.

10        I should indicate, your Honor, that though we made

11 an extensive evidentiary showing concerning Mr. Wollocko's

12 theft of a massive amount of intellectual and physical

13 property, in four years, the Wollockos have never offered a

12        Likewise, your Honor, our pursuit of a remedy for

13  those unlawful acts has not been an easy one, nor have the

14  Wollockos been cooperative at any step in that process, your

15  Honor.  When we commenced the civil action, they vigorously

16  resisted any and all attempts to obtain discovery in the

17  civil matter.  We had to receive repeated orders from the

18  Supreme Court to obtain any discovery whatsoever from the

19  Wollockos.  When the time came and they were obligated to

20  produce certain computer data at the time they knew they

21  were under investigation by the federal government as well,

22  the Wollockos destroyed massive amounts of computer data

23  that were relevant to this dispute.  They attempted to use

24  the criminal investigation to delay proceedings in the civil

25  action, and until today this is the first moment, after

17

1  nearly four years of litigation, that I have heard any

2  suggestion from Mr. Wollocko's side that they would offer or

3  provide any form of restitution to my clients.  For years,

4  we had his counsel, current counsel and predecessor counsel,

5  to come forward to us and offer some restitution for some of

6  the we believe it is many millions of damage that Mr.

7  Wollocko's caused to my our client, as concerned the XRDP

8  machine that was a subject of this criminal charge and other

9  matters.  And until today, not one single penny was offered

10  by the Wollockos in restitution nor did they take a single

11  step in any form, any form, to remedy the wrong that

12  Mr. Wollocko had done to his employer.

13      So any suggestion by the Wollockos, I think

14  Mr. Wollocko in particular, that he was acting in any form

15  of public interest or any public-spirited intention for any

16  reason other than his own personal profit, I think, your

17  Honor, is misleading, and I think it unduly minimizes the

18  fact that this scheme was carried out with deception for the

19  purpose of deceiving his employer and for the purpose of his

20  personal profit.

21      We would ask, your Honor, Mr. Wollocko be accorded

22  the maximum sentence that your Honor deems appropriate

23  within the appropriate guidelines.

24      Thank you, your Honor.

25      THE COURT:  Thank you, Mr. Baum.

18

1       Well, let me say that I am not going to base any

2  of my sentencing decision today on any of the matters

3  occurring in the civil suit.  I am not in a position to know

4  the reasons and positions the parties have taken.  I've

5  heard Mr. Baum state his view of those, but I am not in a

6  position where I am going to engage the parties in a back

7  and forth about what was or was not provided in that

8  litigation, what was or was not said in that litigation,

9   what concessions were or were not made.

10       So let me just be clear, I am not considering for

11   the purposes of any sentence I give today in this matter

12   anything having to do with the civil litigation.  My job is

13   to look at the facts surrounding this case and this matter

14   and make a determination as to what I deem to be the

15   appropriate sentence.

16       I saw you stand, Mr. Ostrer.  Is there anything

17   you want to add or say?

18       MR. OSTRER:  No, your Honor, only that -- no,

19   your Honor, I believe you've stated what -- is resolved what

20   ever my comment was going to be.  I believe the record does

21   and the Probation Department was aware with respect to the

22   second count that the FDA application had been submitted at

23   the time the overt act took place that underlies the second

24   count and he's accepted responsibility for that.

25       As to Mr. Baum's statements, there's a lot that

                                19


1   goes with a piece of litigation that lasts for four years

2   and there may be motives and the like which I readily

3   acknowledge would not be something that would be considered

4   by your Honor, you've already stated it's not.  I won't

5   burden the record with any further comment on it.

6       THE COURT:  Thank you.  I do want to make clear I

7   am not considering anything to do with the civil litigation

8   as part of this sentence.

9          I'll now describe the sentence I intend to impose.

10          First, let me say that, in fashioning a sentence,

11   I am instructed by Title 18, Section 3553A, to fashion a

12   sentence that takes into account the nature and

13   circumstances of the offense, the characteristics and

14   history of the defendant and to impose a sentence that is

15   sufficient but not greater than one that is necessary to

16   effect the following kind of concerns and considerations:

17          First of all, to impose a sentence that reflects

18   the seriousness of the offense and promotes a respect for

19   the law;

20          Secondly, to impose a sentence that provides just

21   punishment for the offense and affords appropriate and

22   adequate deterrence to any further criminal conduct, to

23   protect the public from any further crimes of the defendant,

24   for the purpose of general and specific deterrence.

25          I also will note again that I'm called upon to

20

1   impose a sentence that I think is sufficient but not greater

2   than one than is necessary to achieve those goals.

3          Let me state again that I find that the criminal

4   history category for this defendant to be a I with an

5   offense level of 15, which recommends a guideline range

6   sentence of between 18 and 24 months.

7        Let me say that I do find the defendant's

8   **avocation a good one and a compelling one, that is, whether**

9   **it be for in the public interest or in private interest,**

10  **trying to find solutions and medical solutions to problems**

11  **is admirable, and whether it's this particular product that**

12  **he is pushing or others, there's no question that at the end**

13  **of the day a successful product would be greatly**

14  **advantageous to society.** And I take that very, very

15  seriously.  I look to balance that against what this court

16  could be seen as sanctioning in terms of appropriate

17  behavior to achieve that goal.  And without belaboring the

18  point too greatly, it seems to me that it would be a

19  terrible message to send to say to all of the scientists in

20  the world, or at least in the United States, it's okay for

21  **you to commit frauds and violate the law because, at the end**

22  **of the day, you can come into court and say, but Judge, I**

23  **was trying to create a product that was good, therefore I**

24  **don't have to go to jail.**

25        When people in engage in criminal activity for

21

1   their own private gain as well as perhaps to create a

2   product that will have some greater public use, I think a

3   message needs to be sent that that's to be done in an

4   appropriate way.

5        And there are two kinds of issues in this case

6   that are trouble to this court:

7        First is the fraud Purdu Pharma where there is the

8   use of the company to make arrangements so that he could

9   gain machines for himself;

10        And the second part of the activities of this

11   defendant that are greatly troubling to the court is the

12   posting on the internet that his company was approved by the

13   DEA to handle certain kinds of narcotics when, in fact, he

14   was not.

15        I'm not going to belabor the point, but I'll say

16   that I do not believe that I can sanction that behavior by

17   simply saying to a defendant, you did it and, therefore, you

18   get to walk away.

19        And so, I'm going to impose a sentence of 20

20   months on Count One and Count Two to run concurrently.

21        I'm going to impose a term of three years

22   supervised release on Count One, one year on Count Two to

23   run concurrently for a total term of three years of

24   supervised release.  I am going to waive the fine, finding

25   that this defendant does not now nor is he likely to be any

22

1   time in the near future to be in a position to pay a fine.

2   I'm going to order that he pay full restitution in the

3  amount of $111,661 with a special assessment of $200.

4        This court shall impose the mandatory conditions

5  of supervised release, that is, the defendant shall not

6  commit another federal, state or local crime.  The defendant

7  shall not possess a controlled substance.  The defendant

8  shall not possess a firearm or destructive device and the

9  mandatory drug testing condition will be suspended in this

10  case Purdu to this court's determination that the defendant

11  poses a low risk of any future substance abuse.  And the

12  defendant shall not cooperate in the collection of DNA as

13  directed by the probation officer.

14        The standard conditions of supervision are ordered

15  with the following special conditions:  The defendant shall

16  provide the probation officer with access to any requested

17  financial information, and defendant shall not incur any new

18  credit charges or open any additional lines of credit

19  without the approval of the probation officer unless the

20  defendant is in full compliance with the installment payment

21  schedule.  The defendant should report to the nearest

22  probation office within 72 hours of his release from custody

23  and it is recommended that the defendant be supervised in

24  his district of residence.

25        It is further ordered that the defendant shall

23

1  make restitution again in the amount of $111,661 payable to

2  the clerk of the US District Court for disbursement to Robin

3  Abrams, A-B-R-A-M-S, Esquire, Vice President, Associate

4  General Counsel, Purdu, P-U-R-D-U-E, Pharma, LP, One

5  Stamford Forum, Stamford, Connecticut, 06901.

6        The restitution shall be paid in full. I'm not

7  going to order a date by which the payment ought to be made

8  in full. The restitution shall be paid in monthly

9  installments of 15 percent of the gross monthly income over

10  a period of supervision to commence 30 days after the

11  release of this defendant from custody. The defendant shall

12  notify the United States Attorney for this district within

13  30 days of any change of mailing or residence address that

14  occurs while any portion of the restitution remains unpaid.

15        If the defendant is engaged in a Bureau of Prison

16  nonUNICOR work program, the defendant shall pay $25 per

17  quarter towards the criminal financial penalties; however,

18  if the defendant participates in a Bureau of Prison UNICOR

19  program as a Grade One through Four, the defendant shall pay

20  50, five zero, percent of his monthly UNICOR earnings

21  towards the criminal financial penalties consistent with

22  Bureau of Prison regulations 28 CFR, Section 545.11.

23        Unless I hear objection from the government, this

24  court views the defendant as a good candidate for voluntary

25  surrender and will order a voluntary surrender date.

1        Let me hear if the government has any objections

2   to that. Mr. Jacobson.

3        MR. JACOBSON: Well, we oppose him being out

4   pending appeal. We have no objection to voluntary

5   surrender.

6        THE COURT: Mr. Skolnik, what would be the

7   voluntary surrender date?

8        THE CLERK: May 7.

9        THE COURT: I will order a voluntary surrender

10  date of May 7 at two o'clock. The Bureau of Prisons will be

11  in contact with the defendant to inform him of the location

12  that he is to surrender to. You should know that failure to

13  appear at that location and time is a separate and distinct

14  crime from the one you've been convicted of in this case.

15       Let me also advise you you can appeal your

16  conviction if you believe that your guilty plea was somehow

17  unlawful or involuntary or if there was some other

18  fundamental defect in the proceedings that was not waived by

19  your guilty plea. You may also have a statutory right to

20  appeal this sentence, particularly if you believe that this

21  sentence is contrary to law. With few exceptions, any

22  notice of appeal must be filed within 10 days of judgment

23  being entered in this case. If you are unable to pay for

24  the cost of an appeal, you may apply for leave to appeal in

25  forma pauperis. If you so request, the Clerk of the Court

25

1  will prepare and file a notice of appeal on your behalf.

2        Mr. Ostrer, I saw you beginning to stand, is

3  there --

4        MR. OSTRER:  No, your Honor.  I was going to ask

5  about the designation but you covered that.  I apologize for

6  standing.

7        THE COURT:  No, no problem.

8        I am ordering the sentence be imposed as stated.

9  We stand adjourned.

10        MR. JACOBSON:  Thank you, your Honor.

11        (Proceedings concluded at 1:01 p.m.)

12

13

14        C E R T I F I C A T E

15        I hereby certify that the foregoing is a true and
    accurate transcript, to the best of my skill and ability,
16  from my stenographic notes of this proceeding.

17

18        _____
            Angela A. O'Donnell, RPR
            Official Court Reporter, USDC, SDNY
19

20